UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION AT LEXINGTON**

| | |
|---|---|
| JAMES DAVID TURNER, | ) |
| | ) |
| Plaintiff, | ) Action No. 5:16-CV-0076-JMH |
| | ) |
| v. | ) |
| | ) **MEMORANDUM OPINION AND ORDER** |
| NANCY J. BERRYHILL, | ) |
| Acting Commissioner of | ) |
| Social Security | ) |
| | ) |
| Defendant. | ) |

\*\* \*\* \*\* \*\* \*\*

This matter is before the Court on the parties' cross-Motions for Summary Judgment (DE 10, 11) on Plaintiff's appeal of the Commissioner's denial of his application for disability insurance benefits.[1] The matter having been fully briefed by the parties is now ripe for this Court's review.

**I.**

In determining whether an individual is disabled, an Administrative Law Judge ("ALJ") uses a five step analysis:

1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520(1982)). The ALJ in this case completed this five-step analysis, as described below.

**II.**

On May 30, 2013, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits ("DIB"). [TR 47]. He also protectively filed a Title XVI application for supplemental security income ("SSI") on that date. [TR 47]. In both applications, Plaintiff alleged disability beginning May 1, 2013. [TR 47]. Plaintiff's claims were denied initially and on reconsideration. [TR 47]. On February 19, 2015,

Administrative Law Judge ("ALJ") Bonnie Kittinger issued a written decision, denying Plaintiff's claim for benefits after holding hearing on January 7, 2015. [TR 23-35].

At Step One of the disability determination process, ALJ Kittinger found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. [TR 49]. At Step Two, she concluded that Plaintiff had the following severe impairments: residuals from pulmonary embolism and left lower extremity deep vein thrombosis, status post left leg trauma, anxiety and affective disorder. [TR 49-50].

At Step Three, ALJ Kittinger explained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." [TR 50]. ALJ Kittinger found that Plaintiff "has not had obstruction of a deep vein at [the] level of severity" described in Listing 4.11 of Appendix 1, nor does the "severity of the claimant's mental impairments, considered singly and in combination," meet "the criteria of listing 12.04 or 12.06." [TR 50-1]. The ALJ also considered whether Plaintiff had "repeated episodes of decompensation" as described in listing 12.04C. She concluded the "evidence fails to establish the presence of 'paragraph C' criteria." [TR 51].

Before proceeding to Step Four, ALJ Kittinger found that Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b),

> including lifting or carrying twenty pounds occasionally and ten pounds frequently, standing or walking up to six hours and sitting at least six hours in an eight-hour day, except the claimant can no more than occasionally climb ramps, stairs, ladders, ropes and scaffolds; no more than frequently balance, stoop, kneel, crouch and crawl; and should avoid concentrated exposure to pulmonary irritants. He is able to understand and remember routine, simple-to-straightforward, detailed tasks and to sustain attention on straightforward tasks that require minimal judgment for two-hour segments throughout an eight-hour day for a full workweek. He is able to interact with coworkers and supervisors in an object-focused setting and to adapt to expected, routine task demands.

[TR 52].

ALJ Kittinger then found that Plaintiff was capable of performing past relevant work as a bartender or bar supervisor at Step Four. [TR 56-7].

Nevertheless, ALJ Kittinger proceeded to the final step of the sequential evaluation. [TR 57-8]. At Step Five, she determined that there were a significant number of other jobs in the national economy that Plaintiff could perform. [*Id*.]. ALJ Kittinger based this conclusion on testimony from a vocational expert ("VE"), in response to a hypothetical question assuming an

4

individual of Plaintiff's age, education, work experience, and RFC. [*Id.*]. The VE testified that such an individual could find work as "assembly" (37,000 Kentucky/1,800,000 nationally), order caller (1,000 Kentucky/50,000 nationally), or gatekeeper (11,000 Kentucky/550,000 nationally). [*Id.*]. Based on the testimony of the VE, ALJ Kittinger alternatively found that Plaintiff was capable of making a successful adjustment to other work. [*Id.*]. Thus, she concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, from May 1, 2013, the alleged onset date, through the date of the administrative decision. [TR 57-8.].

ALJ Kittinger's decision became the final decision of the Commissioner when the Appeals Council denied review on January 12, 2016. [TR 1-6]. Plaintiff filed the instant action on March 6, 2016. [DE 1]. Consistent with the Court's Standing Scheduling Order, the parties have submitted cross motions for summary judgment, which are now ripe for review. [DE 10, 11]. Plaintiff argues that ALJ Kittinger's administrative decision is not supported by substantial evidence for two reasons, both of which relate to the RFC assessment. First, Plaintiff argues that ALJ Kittinger failed to afford controlling weight to the opinion of Dr. Getulio Tovar, who diagnosed Plaintiff with bipolar disorder. Second, he contends that ALJ Kittinger erred in affording great

5

weight to the opinion of a non-examining physician, Dr. H. Thompson Prout.

## IV.

When reviewing a decision made by the ALJ, the Court may not "'try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility.'" *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). "The ALJ's findings are conclusive as long as they are supported by substantial evidence." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted). Substantial evidence "'means such relevant evidence as a reasonable mind might accept.'" *Foster*, 279 F.3d at 353 (quoting *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1991)). As discussed below, the ALJ's findings in this case that the opinion of the treating doctor was not entitled to controlling weight, and the ALJ's residual functional capacity determination, were supported by substantial evidence in the record.

## V.

The ALJ is responsible for "evaluating the medical evidence and the claimant's testimony to form an 'assessment of [his] residual functional capacity'" at Step Four of the disability determination process. *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (quoting 20 C.F.R. § 416.920(a)(4)(iv)). The

RFC is an assessment of how the claimant's "impairments, and any related symptoms, such as pain, . . . cause physical and mental limitations that affect what [he or she] can do in a work setting." 20 C.F.R. § 416.945(a)(1). The RFC assessment is "based on all of the relevant medical and other evidence" in the case record, including "statements about what [the claimant] can still do that have been provided by medical sources," as well as descriptions of the claimant's limitations that have been provided by the claimant and his or her family members. 20 C.F.R. § 416.945(a)(3).

The aforementioned medical sources may be classified as treating sources, non-treating sources, and non-examining sources. 20 C.F.R. § 416.927(a)(2). A treating source is a "physician, psychologist, or other acceptable medical source who … has, or has had, an ongoing treatment relationship" with the claimant. *Id.* A treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [his or her] case record." 20 C.F.R. § 416.927(c)(2). If the opinion is not entitled to controlling weight, the ALJ must decide how much weight to give it by considering the length, frequency, nature and extent of the treatment relationship; evidence in support of the opinion; consistency of the opinion with evidence in the record; physician's

specialization; and other factors brought to the ALJ's attention. 20 C.F.R. § 416.927(c)(2)-(6).

A non-treating source is an acceptable medical source who has examined the claimant but does not have an ongoing treatment relationship with him or her, while a non-examining source has not examined the claimant but provided medical or other opinion evidence in the case. *Id.* "[O]pinions from sources other than treating sources can never be entitled to 'controlling weight.'" Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). Instead, the ALJ must weigh the opinion using the same factors discussed above. *Id.* While an ALJ will likely prioritize a treating source's non-controlling opinion over a non-treating source's opinion (and a non-treating source's opinion over a non-examining source's opinion), deviation from this general approach is not a *per se* error of law. 20 C.F.R. § 416.927(c)(2)-(6).

In this case the ALJ did not make a specific finding that Dr. Tovar was a treating source; however, the ALJ discussed standards for evaluating medical source opinions in her decision [TR 52], discussed Dr. Tovar's records throughout the decision [TR 52-6], and stated there was "no subsequent record of mental health treatment in evidence." [TR 55]. The ALJ discusses Dr. Tovar's notes and prescriptions in a series of paragraphs that begin with, "Records of mental health treatment and psychological evaluation do not support the alleged severity of mental or emotional

8

symptoms." [*Id.*] In reading all of this together, the Court can infer that the ALJ recognized Dr. Tovar as a treating source, even though she did not specifically state that fact.

Plaintiff argues ALJ Kittinger erred in not conducting the analysis in 20 C.F.R. § 404.1527(c)(2)-(6) in determining the weight to give a treating physician's opinion if the ALJ is not giving it controlling weight.[2] Plaintiff argues ALJ Kittinger further erred in relying on the GAF score assigned by Dr. Tovar, which the ALJ found to be inconsistent with Dr. Tovar's opinion. Plaintiff notes in his brief that GAF scores are not entitled to any particular weight, *see Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 508 (6th Cir. 2013), but, importantly, that line of cases does not require the ALJ to ignore the GAF score entirely. ALJ Kittinger considered the factors listed in 20 C.F.R. § 404.1527(c)(2)(i) and (ii) when analyzing Dr. Tovar's opinion. "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion." 20 C.F.R. § 404.1527(c)(2)(ii); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) ("If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors—

---

[2] Plaintiff does not raise any issues related to the ALJ's findings regarding Plaintiff's physical limitations, although the treatment and analysis of Plaintiff's physical condition is discussed in the factual background portion of the brief.

namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion."). The ALJ noted Dr. Tovar only treated Plaintiff twice, and both of these times occurred within 12 months of the accident. The ALJ pointed out that Dr. Tovar's opinion was not consistent with his own notes, specifically, that Dr. Tovar "indicated normal appearance, speech, thought processes, judgment, insight, orientation, memory, attention span and concentration; the only abnormal finding an anxious mood." [TR 55]. Thus, the ALJ properly gave Dr. Tovar's opinion only "marginal weight." [TR 56].

The ALJ gave little weight to the opinion of the State agency psychologist who reviewed the evidence in August 2013. [TR 56]. The ALJ found that Dr. Prout's opinion, however, was consistent with the record as a whole, including the opinions of Dr. Cristi Hundley, a treating source, and Dr. Tovar (whose reports Dr. Prout also reviewed). The ALJ therefore gave Dr. Prout's opinion "great weight."

Ultimately, the aforementioned substantial evidence supports the ALJ's RFC finding as well as the weight she assigned to the various treating and non-treating sources. The Court will affirm the Commissioner's final decision which depends upon that finding.

Accordingly, for all of the reasons set forth above, **IT IS ORDERED**:

1) that Plaintiff's Motion for Summary Judgment (DE 10) is **DENIED;** and

2) that Defendant's Motion for Summary Judgment (DE 11) is **GRANTED.**

This the 18th day of May, 2017.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge